# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH WIGGINS,<br><br>        Petitioner,<br><br>   v.<br><br>J.F. SALAZAR,<br><br>        Respondent. | 1:08-CV-01175 OWW JMD HC<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Keith Wiggins ("Petitioner") is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation at the California Substance Abuse Treatment Facility in Corcoran, pursuant to a judgement of the Los Angeles County Superior Court. (Pet. at 2). Petitioner was convicted by a jury on December 11, 1989 of second degree murder. (Id). The jury further found a five year sentence enhancement for prior prison terms and a two year sentence enhancement for the use of a firearm, resulting in an aggregate term of twenty-two years to life. (Pet at 2; Answer at 1).

On December 28, 2006, Petitioner appeared before the California Board of Parole Hearing (the "Board") for a parole consideration hearing. (Pet. Mem. P. & A. at 2). The Board found Petitioner unsuitable for parole. (Id).

Petitioner challenged the Board's denial of parole and sought habeas corpus relief before the Los Angeles County Superior Court. (Answer Ex. 2). The Superior Court, in the only reasoned decision issued in this case, denied Petitioner's request for relief on August 30, 2007. (Id)

1  Petitioner subsequently sought habeas corpus relief before the California Court of Appeal,
2  which summarily denied Petitioner's request on October 26, 2007. (Pet. at 4; Answer Ex. 4).
3  On December 17, 2007, Petitioner filed a petition for writ of habeas corpus with the
4  California Supreme Court. (Answer Ex. 5.) The California Supreme Court summarily denied the
5  petition on June 11, 2008. (Answer Ex. 6).
6  On August 11, 2008, Petitioner filed the instant federal petition for writ of habeas corpus.
7  (Pet. at 1). The petition alleges several violations of Petitioner's right to due process of the law and
8  his rights under the Double Jeopardy Clause stemming from the Board's denial of parole in 2006.
9  On November 24, 2008, Respondent filed a response to the petition.
10  On December 17, 2008, Petitioner filed a reply to the Respondent's answer.

## **FACTUAL BACKGROUND**

California regulations permit consideration of the circumstances of the underlying offense in determining whether a prisoner is suitable for parole. *See* Cal. Code Regs., tit. 15, § 2402(c)(1). Thus, the facts of the underlying offense are relevant to the determination of whether Petitioner posed a danger to the public safety. The Board read into the record of the parole hearing a statement of the facts from a probation officer's report  The portion read into the record, specifically stated:

> On October 3rd, 1988, the victim's mother heard two shots. She looked out her window and saw her son arguing with the defendant. The defendant said to the victim, her son, "You're mama is watching, so I'm not going to kill you." The victim's mother then went out to the defendant and the victim and talked things over. The defendant then began to walk away and the victim started walking up the stairs. The defendant then pulled a gun out of his bag and shot the victim twice.
> The victim's mother ran to the living room and the victim came to the door and said to his mother, "Mama, I'm hit," and he sat on the couch. The victim's mother then looked out of the window and saw the Defendant walking away with one of the witnesses, Stacy Hawn.
> Stacy Hawn, a witness related that the victim owed the defendant money. About two weeks before the victim was killed by the Defendant, the victim had told defendant that he was not going to pay him back and if defendant could do whatever he had to do. Stacy Hawn related that she then [saw] the defendant and the victim arguing. The argument had become so loud she brought in her two children.
> After the incident was over, she phoned the defendant on his car phone and he phoned back. She related to him that the victim had died and the defendant said to her, "Good, that's what I wanted."
> Approximately 30 minutes after Stacy Hawn had been interviewed by the police, the defendant called her at her home. Stacy Hawn told the defendant that the police had said that she was involved. Defendant replied that he loved her, but that he hoped he would not see her in court testifying against him. Stacy Hawn told him that Bald Head was going to tell everything he knew about the defendant. The defendant

related he was not worried, because he was going to have Grape take care of Bald Head.

(Pet Ex. B at 13-14). At the hearing Petitioner objected to the use of the probation officer's report and consequently, the Board also read into the record the statement of facts contained in the state appellate court's decision. The appellate court's decision, as read into the record, stated:

> Although asserting that he acted in what he regarded as self-defense, Appellant did not dispute any of the evidence presented by the People. As a consequent, the physical facts surrounding the homicide were not in dispute.
> It was established that on the evening of October the 3rd, 1988, Appellant went to the premises where Nathaniel Lee resided with his mother. A neighbor saw Appellant following the unarmed Lee toward the house and heard him loudly and repeatedly threaten Nathaniel, "I want my money. If I don't get my money, I'm going to kill you." In fact, Appellant declared the only reason he had not done so to that point was because Lee had told him the family was there, his mother was there.
> During this encounter, several gunshots were heard, perhaps separated by an interval. Appellant concededly fired the fatal shot and then fled the scene. However, since his car was equipped with a mobile phone and beeper, someone with a scanner chanced to pick up his subsequent calls to a woman. He was thus heard to say that he had killed a man over some money and would either kill or pay someone else 5,000 dollars to kill a witness to the offense.
> He then purchased different clothing with the declared intention of flying to Oklahoma. This attempted escape proved unsuccessful when the information derived from his overhead phone conversation enabled police to apprehend him before he could do so. At that time, he had some 3500 dollars in his possession. He exercised his constitutional right to remain silent.

(Id. at 15-16). Petitioner averred that the version of events contained in the appellate court decision was what had transpired during the commitment offense. (Id. at 16).

## DISCUSSION

**I.    Jurisdiction and Venue**

A person in custody pursuant to the judgment of a state court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. While Petitioner's custody arose from a conviction in the Los Angeles County Superior Court, he is currently incarcerated at the California Substance Abuse Treatment Facility/State Prisoner located in Corcoran, which is in Kings County. Kings County is within this judicial district. 28 U.S.C. § 84(b). As an application for writ of habeas corpus may be filed in either the district court where Petitioner is currently incarcerated or in the district Petitioner was

1  sentenced, the Court has jurisdiction over and is the proper venue for this action. *See* 28 U.S.C. §
2  2241(d).

3  **II.     ADEPA Standard of Review**

4        On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of
5  1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's
6  enactment. Lindh v. Murphy, 521 U.S. 320, 326-327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499
7  (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97
8  F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by*
9  Lindh, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)). The
10 instant petition was filed in August 2008 and is consequently governed by the provisions of the
11 AEDPA, which became effective April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003).

12       While Petitioner is not challenging the underlying state court conviction, Petitioner is in
13 custody of the California Department of Corrections and Rehabilitation pursuant to a state court
14 judgment. Thus, 28 U.S.C. § 2254 remains the exclusive vehicle for Petitioner's habeas petition
15 since he satisfies the threshold requirement of being in custody pursuant to a state court judgment.
16 Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) (quoting White
17 v. Lambert, 370 F.3d 1002, 1006 (9th Cir. 2004) in holding that, "[s]ection 2254 'is the exclusive
18 vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even
19 when the petitioner is not challenging his underlying state court conviction'").

20       Since Petitioner filed his petition after the effective date of AEDPA, his petition for habeas
21 corpus "may be granted only if he demonstrates that the state court decision denying relief was
22 "contrary to, or involved an unreasonable application of, clearly established Federal law, as
23 determined by the Supreme Court of the United States."" Irons v. Carey, 505 F.3d 846, 850 (9th Cir.
24 2007) (quoting 28 U.S.C. § 2254(d)(1)); *see* Lockyer, 538 U.S. at 70-71.

25       As a threshold matter, this Court must "first decide what constitutes 'clearly established
26 Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71
27 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this
28 Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of

the time of the relevant state-court decision." Id. (quoting Williams, 592 U.S. at 412). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; *see also* Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. *See* Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

**III.    Review of Petitioner's Claim**

Petitioner alleges four grounds for relief pertaining to violation of his right to due process of the law arising out of the Board's 2006 denial of parole. Petitioner contends that California Penal Code § 3041 creates a liberty interest in parole and that the Board's denial of parole deprived him of this liberty interest. (Pet. M. & A. at 1-3). The petition's second ground alleges that the Los Angeles Superior Court unreasonably applied the some evidence standard in upholding the denial of parole as the Board's determination could not be supported by some evidence. (Id. at 3-18). Specifically, Petitioner challenges the Board's classification of the commitment offense as being unsupported by some evidence. Similarly, Petitioner's fourth contention attacks the Board's finding regarding particular factors–namely Petitioner's prison disciplinary record and the recent nature of his gains–as unsubstantial by some evidence. (Pet. M. & A. at 18-20). Petitioner further alleges that the use of his pre-incarceration arrest record violates the constitutional prohibition against double jeopardy. (Id. at 21-22). Lastly, Petitioner seemingly posits that California's governor has failed to fulfill his legal obligation to review denials of parole and that the Governor's refusal to review denied Petitioner his constitutional right to be heard by an impartial decision-maker. (Id. at 22-25).

These claims were presented in a petition for writ of habeas corpus to the Los Angeles County Superior Court, which denied the petition in the only reasoned opinion issued by the state courts. (*See* Answer Ex. 3). Petitioner's subsequently presented these claims in petitions for writ of habeas corpus to the California Court of Appeal and California Supreme Court respectively. (Answer Exs. 4 and 6).[1] The state appellate and supreme court summarily denied the petition. (Answer Exs. 5 and 7). When reviewing a state court's summary denial of a habeas petition, the Court "look[s] through" the summary disposition to the last reasoned decision. *See* Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000) (citing Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991)). Thus, the California Supreme Court and Court of Appeal are presumed to have adjudicated these claims on the same grounds set forth by the Los Angeles County Superior Court in their reasoned denial of Petitioner's claims. *See* Ylst v. Nunnemaker, 501 U.S. at 803.

### A.   *Due Process Claims*

---

[1] Respondent admits that Petitioner's claims are timely and that Petitioner has exhausted his state remedies with respect to these claims. (Answer Mem. P. & A. at 2).

As the merits of Petitioner's four claims pertaining to violations of his due process rights may be resolved by a consideration of whether some evidence substantiates the Board's determination that Petitioner poses a current unreasonable risk of danger to the public, the Court will considers these claims in this single section.

"We analyze a due process claim in two steps. '[T]he first asks whether there exist a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" Sass, 461 F.3d at 1127. The United States Constitution does not, by itself, create a protected liberty interest in a parole date. Jago v. Van Curen, 454 U.S. 14, 17-21 (1981). In the briefs submitted to the Court, Respondent argues that Petitioner does not have a liberty interest in parole while Petitioner posits the argument that California Penal Code § 3041 creates such a liberty interest. The Ninth Circuit has held that a prisoner possess a liberty interest in parole where mandatory language in a state's statutory scheme for parole creates a presumption "that parole release will be granted' when or unless certain designated findings are made, and thereby give rise to a constitutional liberty interest.'" McQuillion v. Duncan, 306 F.3d 895, 901 (9th Cir. 2002) (quoting *Greenholtz v. Inmates of Nebraska Penal*, 442 U.S. 1, 12 (1979) in holding that California's parole scheme gives rise to a cognizable liberty interest in release on parole). California Penal Code section 3041 contains the requisite mandatory language, thus vesting in California prisoners "whose sentence provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause." Irons, 505 F.3d at 850; *see* McQuillion, 306 F.3d at 903; *see also* Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003). Consequently, the Court finds that Petitioner has a protected liberty interest in a parole date.

A finding that a liberty interest exists does not end the Court's inquiry as a petitioner's due process rights are not violated by the denial of a liberty interest where the denial follows the state's observance of certain procedural safeguards. *See* Greenholtz, 442 U.S. at 12. Respondent argues due process merely entitles Petitioner the right to be heard, advance notice of the hearing, and for the Board to state their reasons for denial. This contention is based on the argument that the "some evidence" standard does not constitute clearly establish Federal law and is not applicable to parole

denials.  Conversely, Petitioner argues that the "some evidence" standard is applicable law under AEDPA and that the Board's conclusion that Petitioner posed a current danger was not supported by some evidence.[2]  Respondent is correct in asserting that, notwithstanding a prisoner's liberty interest in a parole date, a parole release determination is not subject to all of the due process protections of an adversarial proceeding.  Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987)..  "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a Petitioner in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists."  Id. at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987).  At a state parole board proceeding, an inmate is entitled to receive advance written notice of a hearing.  Pedro, 825 F.2d at 1399.  Additionally, the inmate must be afforded an "opportunity to be heard" and told why "he falls short of qualifying for parole."  Greenholtz, 442 U.S. at 16.  Here, the Court notes that Petitioner does not allege that he was deprived of any of these rights.

However, the Ninth Circuit has consistently recognized that due process mandates an additional procedural safeguard–specifically requiring that the Board's decision be supported by "some evidence."  *See* Irons, 505 F.3d at 851; *also* Sass, 461 F.3d at 1128-1129.  "In *Superintendent, Mass. Correc. Inst. v. Hill*, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by some evidence in the record.'"  Sass, 461 F.3d at 1128 (citations omitted).  The Ninth Circuit has held that the same standard of "some evidence" that applies to the revocation of good time also extends to parole determinations and that this same standard of judicial review applies of habeas petitions regarding parole denials.  Irons, 505 F.3d at 851; Sass, 461 F.3d at 1128-1129.  This evidentiary standard prevents arbitrary deprivations of the prisoner's liberty interest without imposing undue administrative burdens or threatening institutional interests.  Superintendent v. Hill, 472 U.S. 445, 455 (1985).  Thus, the Court finds that the "some evidence" standard is applicable and the dispositive inquiry now before this Court is whether the state court's decision, that

---

[2] Petitioner also argues that as the Board performs the same function as a trial court in sentencing, the Board should be required to apply a preponderance of the evidence standard in making its determination. (Pet. M. & A. at 7).  As such a proposition is unsupported by California's statutes and by relevant legal authority, the Court declines to superimpose the standards applicable to the trial court in its sentencing functions to the Board in its determinations of parole suitability.

"some evidence" existed regarding Petitioner's current dangerousness, was unreasonable.

This inquiry is framed by the state's statutes and regulations governing parole suitability determinations. Irons, 505 F.3d at 851; Briggs, 334 F.3d at 915. California law provides that after an eligible life prisoner has served the minimum term of confinement required by statute, the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for" the prisoner. Cal. Penal Code § 3041(b). "[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole. Cal. Code Regs., tit. 15, § 2402(a); *see* In re Dannenberg, 34 Cal.4th 1061, 1078, 1080 (Cal. 2005). The Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors set forth in the California Code of Regulations. *See* Cal. Code Regs., tit. 15, § 2402; Irons, 505 F.3d at 851-852; Biggs, 334 F.3d at 915-916. The regulation's criteria permits consideration of "all relevant, reliable information available to the panel," and explicitly calls for consideration of "the base and other commitment offenses, including behavior before, during and after the crime," among several other factors.[3] Cal. Code Regs., tit. 15, § 2402(b). Factors supporting a finding of unsuitability for parole include: (1) the underlying offense was carried out in an "especially heinous, atrocious or cruel manner"; (2) a record, prior to incarceration for the underlying offense, of violence; (3) a history of unstable relationships with others; (4) sadistic sexual offenses; (5) a lengthy history of severe mental problems related to the underlying offense; and (6) serious misconduct in jail. Cal. Code Regs., tit. 15, § 2402 (c)(1)-(6); *also* In re Shaputis, 44 Cal.4th 1241, 1257 n. 14 (Cal. 2008).

The California Supreme Court recently reiterated that the aggravated circumstances of the

---

[3] The statute specifically states, "All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstance which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability." Cal. Code Regs., tit. 15, § 2402(b).

commitment offense may serve as a basis for denying parole but limited consideration of this factor, stating that:

> [T]he aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

In re Lawrence, 44 Cal.4th 1181, 1214 (Cal. 2008).[4] The *Lawrence* court further clarified that some evidence will support the Board's reliance on immutable facts, such as an inmate's criminal history or the commitment offense, if those facts support "the ultimate conclusion that an inmate *continues* to pose an unreasonable risk to public safety." Id. at 1221 (emphasis in original) (holding that relevant inquiry before a reviewing court is whether some evidence supports the decision that the inmate constitutes a current danger to the public safety, not merely whether some evidence confirms the existence of the Board's factual findings). Noting that "all of the information in [the] postconviction record supports the determination that the inmate is rehabilitated and no longer poses a danger to public safety," the California Supreme Court found that the commitment offense was not probative of petitioner's current dangerousness. Id. at 1226-1227; *but cf.* Shaputis, 44 Cal.4th at 1260 (holding that immutable factor of commitment offense, when combined with a failure to gain insight and understanding into the crime, provides some evidence of current dangerousness).

After reviewing the record, the Court concludes that the state court did not unreasonably apply clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). Petitioner erroneously claims that the Superior Court "overstepped its bounds" by providing a nexus between the facts cited to by the Board and the Board's conclusion. The state court's function is to analyze whether the Board's determination is supported by evidence and in fulfilling this function, the Los Angeles Superior

---

[4] Petitioner's request for judicial notice, filed September 19, 2008, is granted in part and denied in part as federal courts are bound to take judicial notice of state decisional law. Lamar v. Micou, 114 U.S. 218, 223 (1885); *see* White v. Gittens, 121 F.3d 803, 805 (1st Cir. 1997) ("[W]e may take judicial notice of published state court dispositions of cases"). While the California Supreme Court's opinion in *Lawrence* is not binding on this Court, the Court finds it has persuasive value in determining the merits of Petitioner's claims. Thus, the Court takes judicial notice of *In re Lawrence*, 44 Cal.4th 1181. However, the Court denies Petitioner's request to take judicial notice of *Biggs v. Brown*, for which Petitioner sought to rely upon the Governor's Annual reports which were submitted in *Biggs* as an exhibit. *Biggs* is currently pending in the Eastern District and therefore is not "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993).

1  Court did not display the impartiality or bias claimed by Petitioner. (Pet. M. & A. at 8). Rather, the
2  state court applied the correct standard in analyzing the Board's reliance on "the grave nature of the
3  commitment offense and the Petitioner's previous record of violence" in determining if this could
4  constitute some evidence of Petitioner' s current dangerousness. (Answer Ex. 3 at 2). In analyzing
5  the Board's reliance on the commitment offense, the state court pointed to evidence that the crime
6  was committed in a dispassionate and calculated manner–noting specifically that Petitioner
7  previously threatened to kill the victim; Petitioner told the victim that but for the presence of the
8  victim's mother Petitioner would have killed the victim; and once the victim's mother was no longer
9  watching, Petitioner shot the unarmed victim. (Id. at 1-2). The state court further noted though that
10 the Board's finding pertaining to the callous disregard for human suffering lacked an evidentiary
11 basis. The state court also discussed the trivial motive for the crime, remarking that money
12 motivated the shooting and that the victim had been unarmed and no longer posed a danger to
13 Petitioner.
14      The Court's examination of the parole hearing record reveals that the state court was correct
15 in asserting that the primary reasons for denying Petitioner parole was the commitment offense and
16 Petitioner's pre-incarceration record. In explaining their denial of parole, the Board specifically
17 stated, "the Panel struggled with this. We were swayed, obviously, by the commitment offense and
18 your past record." (Pet. Ex. B at 61). The Board, while noting Petitioner's many accomplishments,
19 concluded that the offense was carried out in a dispassionate and calculated manner and the motive
20 for the crime was inexplicable. Petitioner challenges the Board's findings, arguing that since the
21 crime he committed was not an execution style murder, this particular finding is erroneous. (Pet. M.
22 & A. at 10). State regulations provide that, in determining whether the commitment offense was
23 "especially heinous, atrocious or cruel," the following factors may be considered: the offense was
24 carried out in a dispassionate and calculated manner, such as an execution-style murder; the victim
25 was abused, defiled or mutilated during or after the offense; the offense was carried out in a manner
26 which demonstrates an exceptionally callous disregard for human suffering; the motive for the crime
27 is inexplicable or very trivial in relation to the offense. Cal. Code Regs., tit. 15, § 2402(c)(1).
28 Petitioner's situation is distinct from both *In re Scott*, 119 Cal.App.4th 871, 889-891 (Cal. Ct. App.

2004), wherein petitioner suffered from significant stress and was convicted under a felony murder theory, and *In re Gray,* 151 Cal.App.4th 379, 407-408 (Cal. Ct. App. 2007), where petitioner suffered significant stress and fear in a threatening confrontation with the victim.  Here, the record reveals Petitioner did not feel threatened when he shot the victim, as Petitioner responded negatively when asked the question, "[y]ou were not threatened at that particular time?"  (Pet. Ex. B at 17-18). Rather, the probation officer's report and the appellate court decision read into the record reveals several facts that would support a finding that Petitioner's crime was especially committed in a dispassionate and calculated manner, including: Petitioner and the victim argued about a debt the victim owed Petitioner during which Petitioner threatened to shoot the victim but stated he would not do so while the victim's mother was present; that the victim was unarmed when the Petitioner shot the victim; that Petitioner shot the victim's mother was no longer present; and that Petitioner made an attempt to either kill or pay someone else to kill a witness to the crime.  (Id at 13-16).  These facts support the finding that the crime was especially heinous, atrocious, or cruel, and subsequently that Petitioner posed a current danger.

Additionally, the record reveals ample evidence to find that the motive, in comparison the crime, was trivial or inexplicable as the statement of facts from the appellate court decision noted that Petitioner himself was "heard to say he killed a man over some money." (Id. at 16).  Motivation of monetary debt or gain where there exists no need for the money, when compared with the crime of murder, has been found by the state courts to constitute a trivial of inexplicable reason.  *See* In re Fuentes, 135 Cal.App.4th 152, 161-163; Countryman v. Stokes, No. CV 06-1388, 2008 WL 1335934, at *9 (C.D. Cal. Apr. 08, 2008).  The appellate court's statement of facts, which was read into the record of the parole hearing at Petitioner's insistence, found that Petitioner had shot the victim over money, Petitioner had $2,500 in his possession when he attempted to escape the police's jurisdiction, and Petitioner offered to pay someone $5,000 to kill a witness.  (Pet. Ex. B at 15-16). As Petitioner has never averred that he needed the money, the killing of the victim over money would seem trivial or inexplicable when compared with the murder.

The Board, and the state court, also relied upon Petitioner's pre-incarceration record to find that he posed a current danger.  As admitted by Petitioner during the hearing, Petitioner had "a pretty

U.S. District Court
E. D. California

12

substantial criminal record." (Pet. Ex. B at 20). Petitioner's criminal record included arrests or convictions for grand theft, grand theft auto, and a robbery wherein Petitioner was carrying a gun. (Id. at 21). California regulations permits consideration of a prisoner's pre-incarceration criminal record. *See* Cal. Code Regs., tit. 15, § 2402(b); *see also* Cal. Code Regs., tit. 15, § 2402(c)(2). Here, Petitioner's previous record includes a robbery conviction, the circumstances of which included Petitioner carrying a weapon and being injured by gunfire. As noted by the Board, Petitioner's record reveals a pattern of escalating criminal behavior as he moved from theft to robbery and finally to a murder conviction. Furthermore, the record reveals a failure to profit from previous attempts at rehabilitation as Petitioner's previous time in prison did not prevent him from committing additional crimes once released. Thus, there exists some evidence in the form of the commitment offense and Petitioner's pre-incarceration record that Petitioner posed a current unreasonable risk of danger.

While Petitioner's denial of parole stems from immutable factors, similar to *Lawrence*, the *Lawrence* court had been confronted with a denial of parole stemming from a thirty-six year old commitment offense. Here, Petitioner was denied parole in 2006, at which time he had only served seventeen years of his twenty-two year minimum sentence. The Court notes that the Board's reliance on immutable factors in such a case does not constitute a violation of due process. The Ninth Circuit in *Irons* found that a parole board's sole reliance on the commitment offense comports with the requirements of due process where the board's determination of unsuitability came prior to the prisoner serving the minimum number of years required by his sentence. Irons, 505 F.3d at 853. Here, Petitioner was convicted on December 1989 and sentenced to an aggregate term of twenty-two years to life. (Pet. at 2). Petitioner will have served the minimum number of years required by his sentence in late 2011. Consequently, the Board's reliance on the commitment offense and other immutable factors does not constitute a violation of Petitioner's due process rights as their denial came before Petitioner served the minimum number of years required by his sentence.

Lastly, the Court rejects Petitioner's challenge to the Board's findings with regards to particular factors.[5] The relevant inquiry concerning Petitioner's due process rights, as Petitioner

---

[5] Specifically, Petitioner's grounds attack the Board's findings with regards to Petitioner's prison disciplinary record, recent nature of his gains, and the manner in which Petitioner committed the underlying offense.

himself noted, is determining whether some evidence supports a finding that Petitioner poses a current unreasonable risk of danger. A discussion of whether some evidence supported the particular factors cited by the Board is immaterial where some evidence outside of these factors would support the Board's finding that Petitioner is currently dangerous. Furthermore, "[t]he requirements of due process are satisfied if some evidence supports the decision...Ascertaining whether this standard is satisfied does not require an examination of the entire record, independent assessment of the credibility of witnesses, or *weighing of the evidence*." Hill, 472 U.S. at 455 (emphasis added); *see also* Powell v. Gomez, 33 F.3d 39, 42 (9th Cir. 1994) (finding that court cannot re-weigh the factors supporting parole suitability and the factors supporting parole unsuitability).

### B. *Double Jeopardy Claim*

Petitioner argues that the use of his pre-incarceration convictions violates the prohibition against multiple prosecutions and punishments for the offense, as contained in the Double Jeopardy Clause. The Superior Court found Petitioner's contention to be without merit, citing to Title 15 of California's Code of Regulations, section 2402 for the proposition that all relevant information is available for the Board's consideration. (Answer Ex. 3 at 2-3). As the California Supreme Court and Court of Appeal issued summary denial in this instant action, they are presumed to have adjudicated these claims on the same grounds set forth by the Los Angeles County Superior Court in their reasoned denial. *See* Ylst v. Nunnemaker, 501 U.S. at 803.

The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Specifically, the Double Jeopardy Clause contains three distinct constitutional protections for a criminal defendant. Plascencia v. Alameida, 467 F.3d 1190, 1204 (9th Cir. 2006). "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishment for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717 (1969); Brown v. Ohio, 432 U.S. 161, 165 (1977). As noted by the Ninth Circuit and the Supreme Court, the protections against multiple punishment for the same offense does not necessarily preclude cumulative punishments in a single prosecution. Plascencia, 467 F.3d at 1204 (citing Missouri v. Hunter, 459 U.S. 359, 366 (1983)). The dispositive inquiry in

determining whether a constitutional violation has resulted from multiple punishments is legislative intent. Ohio v. Johnson, 467 U.S. 493, 499 (citing Hunter, 459 U.S. at 368-69)).  Specifically, where the legislature intended to impose multiple punishments and that intent is clear, the punishments are not multiple and therefore do not invoke the Double Jeopardy Clause. Plascencia, 467 F.3d at 1204.

Parole and probation are part of the original sentence and decisions concerning either are not considered multiple punishments for the original offense. United States v. Brown, 59 F.3d 102, 104-05 (9th Cir.1995) (per curiam); Lopez v. Board of Prison Terms, No. CV S022148GEBDADP, 2005 WL 1683948, *6 (E.D. Cal. July 11, 2005); Dannenberg v. Ornoski, No. C  06-00403 CW, 2008 WL 1734766, * 13 (N. D. Cal. April 14, 2008).  Furthermore, the Court notes that California regulations permit consideration of prior all relevant information and more specifically of "past criminal history, including involvement in other criminal misconduct which is reliably documented." Cal. Code Regs., tit. 15, § 2402(b).  Thus even if denial of parole could be considered an additional punishment, the legislature has clearly expressed the intent to impose multiple punishments by permitting consideration of previous criminal conduct.

### C. Governor's Refusal to Review Denial

Petitioner claims that the Governor's refusal to review his parole denial constitutes both a failure by the governor to fulfill his duties and violates his right to have an impartial decision maker. Petitioner presented this claim to the state courts. (Answer Ex. 2 at 54-56; Answer Ex. 4 at 63-65; Answer Ex. 6 at 57-58).  Petitioner's claim was rejected without explanation in the state courts.  (*See* Answer Exs. 3, 5, 7).  As a result of the unexplained rejections, this Court conducts an independent review of the record to decide whether the state court's decision was objectively reasonable. Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

Under California's parole scheme, the Governor's review of the grant or denial of parole to prisoners with an indeterminate sentence resulting from a murder conviction is *discretionary*.  *See* Cal. Const., art. V, § 8(b).  A prisoner has a right to have his denial or grant of parole be made by an impartial decision maker. *See* O'Bremski v. Maass, 915 F.2d 418, 422 (9th Cir. 1990) (holding that parole hearing be conducted by "a Board that [is] free from bias of prejudice); In re Rosenkrantz, 29 Cal.4th 616, 660 (Cal. 2003) (finding that this right similarly applies to the Governor's review of

1 parole decisions).  However, there exists no support for Petitioner's contention that the exercise of
2 the Governor's discretion, in refusing to review the Board's denial, is evidence of impartiality.  Thus,
3 Petitioner's contention that his right to an impartial decision maker is conclusory as there contains no
4 allegation that the Board was biased.  *See* Jones v. Gomez, 66 F.3d 199, 204-05 (9th Cir. 1995)
5 (stating that conclusory allegations are not sufficient to support habeas relief). Consequently, the
6 Court finds this ground to be without merit and concludes that the state court decision rejecting the
7 claim was objectively reasonable.

## RECOMMENDATION

9 Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be
10 DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for
11 Respondent.

12 This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United
13 States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304
14 of the Local Rules of Practice for the United States District Court, Eastern District of California.
15 Within thirty (30) days after being served with a copy, any party may file written objections with the
16 court and serve a copy on all parties.  Such a document should be captioned "Objections to
17 Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and
18 filed within ten (10) court days (plus three days if served by mail) after service of the objections.
19 The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(c).  The
20 parties are advised that failure to file objections within the specified time may waive the right to
21 appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

23 IT IS SO ORDERED.

24 **Dated:   January 27, 2009**          **/s/ John M. Dixon**
                                          UNITED STATES MAGISTRATE JUDGE